We will hear argument this morning in Case 20-1775, Arizona v. San Francisco. General Brnovich. Mr. Chief Justice, and may it please the Court, the Ninth Circuit's refusal to let Arizona and other states intervene to defend the public charge rule capped an unprecedented effort by the United States to unlawfully disregard a prior administration's rule. The Department of Justice had spent more than a year successfully fighting the rule's challengers in four different circuits. Every injunction against the rule had been stayed, and this very court had granted certiorari. But the new Biden administration suddenly abandoned its defense of the rule. It coordinated with the rule's challengers and dismissed the granted petition by this court. All of the pending appeals in the lower courts as well, and it left one final nationwide injunction against the rule in place. Based only on that, the Biden administration rescinded the rule without notice and comment rulemaking. Within days of these legal maneuvers, Arizona and other states tried to intervene in every district or every circuit court to defend the rule. In the case below, the Ninth Circuit denied intervention without any reasoning. That was error. The petitioners had satisfied all four requirements for intervention as a matter of right and easily cleared the bar for permissive intervention. Arizona has a protectable interest because the rule saved the states collectively more than a billion dollars per year. This case could impair those interests because the decision against the rule would reimpose those costs on the states. Fixing this error, not just for Arizona, but also to ensure this case does not become a blueprint for evading the APA in the future. The public charge rule is enacted through notice and comment rulemaking. Therefore, notice and comment rulemaking is required to rescind or replace it. Making clear the states can intervene in these circumstances is the only way to ensure future administrations follow the APA. I look forward to your questions. Would you explain why you have standing to challenge the Ninth Circuit's preliminary injunction in this case? Your Honor, the states, even by the Department of Justice's own brief, acknowledges the states are impacted fiscally by way of more than a billion dollars. Furthermore, we know that in future APA cases, the states have an interest in ensuring that we have the ability to comment on future rules and proposed rules and not reward behavior in this type of case. But did you comment on this rule or on the replacement rule? Your Honor, the Department of Justice had just announced a new proposed rule, and ironically, even in that proposal, they noted that the states would be affected by more than a billion and a half dollars. We have commented on previous rules. We do believe the primary issue here goes back to whether the states timely move to intervene, which we did, whether there is an interest, which there is. Even the respondent states recognize that all of us have an interest. One final question, then. What makes this case different from any other case? I mean, when administrations change, I think this is my fifth administration change, and the new administration often changes its position in cases. So what's different from this case in which the administration declines to appeal an adverse ruling? Justice Thomas, this was an unprecedented legal maneuver. What the Department of Justice did here when the administration changed is literally not only drop an appeal when this very court had granted certiorari, but then simultaneously dismiss further appeals in the circuit courts, left in place one judgment in the Northern District of Illinois, and then used that district court decision to rescind a rule without going through the proper notice and rule commenting. And so it is really unprecedented. Frankly, I'm not aware of any other precedent where you have these types of maneuvers. In fact, just last year, if my recollection is correct, there was a pending criminal case where the new administration felt like they couldn't defend that case in good faith before this court, and this court allowed another party to represent those interests. And if I recall, it was a 9-0 decision that ultimately they prevailed. So the key is that the administration not only changed, but it refused and opposed the states intervening to protect our interests. Counsel, I'm not sure what your interest is. First of all, the preliminary injunction didn't run against you, correct? So as far as you were concerned, outside of the Seventh Circuit's injunction, there was no preliminary injunction against enforcement of the rule in your jurisdiction, correct? Justice, we know that the states, during the 2019 rulemaking process, there literally is an impact of billions of dollars. Counsel, I agree. But the injunction here was a preliminary injunction, not a decision on the merits, correct? That is correct. So if it's not a decision on the merits, it's a preliminary injunction that ran against other states. As far as this injunction's jurisdictional scope, it didn't bar the enforcement of the rule in your state, correct? Justice, the injunction... Just answer that yes or no. The injunction ran against other states, correct? That is technically correct, yes. Technically and otherwise, it didn't bar the administration from enforcing the rule in your state. This preliminary injunction in the Ninth Circuit did not run against you, correct? Or in your favor? Well, Justice Sotomayor, they're preliminary now, but the point is they could become permanent at some point. How can they become permanent when... The preliminary injunction has been vacated, correct? That is correct. So there is no injunction in place. The only thing that can happen is if the rule is resuscitated, correct? If the rule remains not in place or a new rule comes in, correct? That is correct. So now let's go to when they vacated the rule. Didn't you have the right to file an APA action in the appropriate D.C. court fighting the fact that they had improperly rescinded the rule? If we look at the timeline... Just answer yes or no. Did you have a legal opportunity? I don't remember what the statute of limitations is. But I thought when a rule has been rescinded, you have a certain number of days to challenge that, don't you? That is correct. And the jurisdiction for that is not in the Ninth Circuit, correct? The jurisdiction for that APA action is not in the Ninth Circuit. But there was pending cases in the Ninth Circuit. What does that have to do with the rescission of the rule? The legal harm to you is that a rule that you think favors you was illegally rescinded. You had another jurisdiction to fight that illegal rescission, didn't you? On March 9th... Just answer the question. Within a day, we did. We are. We're trying to... But I don't know how that issue will be litigated in the Ninth Circuit. Because the rule was being litigated in not only the Ninth Circuit, but other circuits. The issue of whether the rule was illegally rescinded will not be litigated in the Ninth Circuit, correct? It is necessary for us to intervene in the Ninth Circuit, but it doesn't mean that it's sufficient for the process to be completed. So the rule was rescinded on the basis of... I don't know how many sentences it was. On the basis of a judicial decision in another court, right? Yes, Justice Roberts. So is the rule that you can challenge the decision in the other circuit as a basis for challenging the rescission of the rule? Or do you go back to the district court in D.C.? And in the D.C. Court of Appeals, or district court, whichever it is, you argue that the judgment in the district court in Illinois was erroneous? Or do you go straight to the one in Illinois? Justice Roberts, I believe the proper approach is to allow the states to intervene not only in the Ninth Circuit, but once this court allows the states to do that, I would fully anticipate that the states then would intervene in the other circuits, including trying to get the decision overturned by the Seventh Circuit and Northern District of Illinois. And once again, it was unprecedented illegal maneuvering by the Department of Justice when you have all of these different appeals going through the process. Everybody has the same question, I think. My understanding was I probably put the same question in just a slightly different way. There are some orders of some district courts in California and in Washington. And those were the orders that went to the Ninth Circuit. Now my last, I'm a little out of date, and I've seen how Los Angeles has spread. But I don't think it's yet spread to Arizona. And so there's nothing around that actually says anybody has to do anything in Arizona. In this case, it's in the Seventh Circuit case that you have a problem. So I don't see why, because they have a nationwide injunction. So you might say, look, what we want to do is we want to say that the Solicitor General of the former administration was right, that the cases are wrong, and we're going to go to the Supreme Court and we're going to ask for rehearing. But if you win, you've got something set aside that applies only to California and the Eastern District of Washington. It never applied to you in the first place. So what we should do is wait for this thing to come out of the Seventh Circuit, where there really is something that affects you, or at least could. So you see everybody is in the same box here, and I read pretty carefully what you said. I have to admit, I maybe didn't read it carefully enough. I didn't quite see how you get out of that box. Justice Breyer, I think we all agree that we don't want the problems of Los Angeles spreading to the rest of the country. So I think we can be in agreement on that. But by its very nature, immigration doesn't, and this Court has recognized that, it doesn't stay in one state. So what happens in California, once someone has that status, that does then affect Arizona and the benefits and those programs, those social welfare programs and those safety net programs. So it's not something that's confined to the state of California. And furthermore, we would anticipate why it's important for this Court to allow the states, the petitioner states, to intervene as a matter of right, is because then it creates the ability to not only intervene in the Ninth Circuit, but to intervene in the Seventh Circuit. Yeah, I got the point. Your point basically is, look, it's actually not Los Angeles. It's San Francisco. We know that. So you're saying that some of the immigrants under this thing, in fact, that come to San Francisco, and they would go to Arizona. Now, I'm from San Francisco, and I don't know why anyone would leave San Francisco. But is there anything in the record or anywhere else that gives us any kind of idea that there were some people affected by this or a lot or many that really did go to Arizona? Justice Breyer, because of the litigation, the lawsuits, and the injunctions, the rule didn't have a lot of time to be into place. And so we do know that historically in immigration-related cases, including the Fifth Circuit and the DAPA case, that courts have recognized that what goes on in one state-related immigration affects other states. And all the state of Arizona is asking here. We know this Court has said that states can enforce immigration laws. So we're at least allowing the states to step in and defend the federal law when the federal government won't. General Brnovich, let me ask you about that. So what do you propose that the federal government should have done here? Because one administration is not obliged to defend the rule adopted by the prior administration. The Biden administration was entitled to change positions, right? So once the Biden administration changed positions, what do you think the Biden administration should have done to effectuate that? Well, they could have done, once this Court accepted certiorari, continued to defend the rule. But that doesn't posit they don't have to. What should they do? Then they should not have objected, and they should have allowed the states to step in and defend the rule when they wouldn't. I thought your position was that they should have gone through notice and comment rulemaking to repeal the public charge rule, which is, for example, what this Court said that the prior administration had to do in the DACA case. Absolutely, Justice Roberts. Well, if that's your position, and I think that that's a very reasonable position, that the government here acted in a way that you would not typically expect or want, and that it counts as an evasion of notice and comment. But if it's an evasion of notice and comment, I mean, you bring an APA suit. It's a violation of the APA. That's the proper remedy. I mean, there's a kind of mismatch here between what you're saying went wrong and what you're saying you want. If it's an evasion of notice and comment, bring an APA suit, saying it's an evasion of notice and comment, rather than my trying to intervene in a suit that's completely dead that never applied to you in the first place. Justice, part of the problem is that you have this Northern District of Illinois decisions out there that the administration used as their basis to repeal the rule, and that ends up with the rule being repealed. That essentially will serve as a baseline for future rulemaking. And if, for example, there is a lawsuit against the new proposed rule, the 2022 rule, then what will the states or what will the government go back to? And so it is important the states have that interest not only to intervene because of the financial costs, but more broadly speaking is we do want the administration to follow the Administrative Procedures Act and go through the proper notice. Are you saying then that there would be nothing, the APA could, sorry, the administration could say, our hands are tied because there's this vacatur of the rule that the district court in the Northern District of Illinois entered, so you really couldn't bring an APA action? Is that your position? Justice, that is part of the concern of the states, is that the administration would use that decision as the basis to say that the rule is no longer in place, and yes. Well, but I mean, I think a court would be quite within its rights to say something along the lines of what you started with if the government said that to them. It's like you can't use some decision out of the Northern District of Illinois to circumvent notice and comment. Wrong. You can't do that. And they would have said, this is unprecedented. Of course, governments decide not to defend rules all the time when administrations change. That's not problematic. But this other thing, which is like dismissing everything except one suit in order to say, you know, now we get rid of the rule without doing notice and comment, that's a different thing. And a court in an APA suit could say exactly that. I mean, that's the mechanism for a violation of the APA is an APA suit. Yes, Justice Kagan, but part of the concern is that you would have inconsistent results with different courts making different decisions, and it would create chaos and uncertainty in the law. What would the APA proceeding look like? You've got a repeal that has one sentence, which is saying that the Illinois court says this is no good. We, you know, we acquiesce in that. We don't want to waste people's time. And so that's why we're repealing this. Now, if you bring an APA suit challenging the repeal, I guess in the District of Columbia, would the District of Columbia court then review the Illinois court order and say, well, we don't think that's right, and so you can't repeal it? Or would they say, we think that is right, so you can repeal it? Well, Chief Justice, I'm not sure what the courts would do. I learned a long time ago as a young prosecutor not to predict what any judge, especially a federal judge, is going to do. But I do think that there is a legitimate concern is that you might have some federal judge somewhere saying, well, this decision is out there, and they use that as a basis to essentially say that the rule is unconstitutional without allowing the states to come in and essentially defend the rule. So you didn't try because of that judgment, the predictive judgment that you might lose? No. Justice Barrett, it was more of a matter of timing. Literally on March 9th, when the administration took the unprecedented step of simultaneously dismissing all of the various appeals and then agreeing that that decision... And I understand why, as a matter of timing, you moved to intervene when you did in the Ninth Circuit. I'm just saying, like, you know, to Justice Kagan's point, you haven't then pursued this APA challenge that you could have filed in the District of Columbia. And is that because you think you would lose it? You said, you know, it's hard to predict what a federal judge would do. It is. We know, though, that the four lawsuits are going through the circuit courts, and we think that's the proper vehicle at this point. Counsel, I am so totally confused about why this suit is here and not either an APA suit or simply the Seventh Circuit suit. If you go back and we permit you to intervene, we say you should have intervened, can you proceed with the Ninth Circuit case in light of the Seventh Circuit injunction? Well, Justice Sotomayor, our intention or our plan would be to ask for an unblocked review of the entire panel of the Ninth Circuit, and if that didn't work... But they've already vacated the preliminary injunction. So there's nothing for them to review. So the en banc, there is no injunction from the Ninth Circuit. There's no injunction against you. There's no injunction against the three states and California that are at issue. Because that was vacated as a result of the dismissal of this action. So I don't know how you can proceed until the Seventh Circuit injunction is lifted. Justice, we have also moved to intervene in the Seventh Circuit. No, no, no, but until you get that lifted, and until you get the rescission of the rule lifted, something that can't be done by the Ninth Circuit, there's nothing further you can do in any other circuit. Justice Sotomayor, we could, if we are allowed to intervene, not only in the Ninth Circuit, we would intervene and move to vacate the judgment from the Northern District Court. But you're suggesting the Ninth Circuit could vacate the Seventh Circuit's judgment? No, I didn't suggest that, Your Honor. You would say, I would use what happened in the Ninth Circuit so that I can get into the Seventh Circuit. Yes, Justice. It's an interesting proposition. You have an interesting point. I mean, I've never seen anything like this. I think that your suggestion, which is quite, I don't know the answer. You say, look, they just withdrew this rule. And they're saying they're just acquiescing in a court decision. So, of course, we have the power to acquiesce in the court decision. And you say, but wait a minute. If they want to change the rule, they should go through notice and comment. They say we're acquiescing. So you're here because you say that decision that they want to acquiesce in is really wrong. And we want to intervene to make sure that the Supreme Court or their court on, you know, on bank or something, says it's wrong. Because if not, we're not going to have the chance to say that they could go through notice. They should go through notice and comment when they change the rule for the reason that they're just acquiescing. And we want there to be nothing to acquiesce in. Now, that is it. Now, don't, you're just going to agree because it sounds if I'm agreeing with you. Of course, thank you. Can I sit down now, Justice? I know, I know. But just don't do that because later on I think how wrong I was. No, you're absolutely right. I'm sure you're right. But what I wonder, looked at that way, I can't think of anything I ever saw like that. And I'll be interested if the government has. And it is sort of a point. And the simplest thing would be to wait for the Seventh Circuit. When is that going to happen? Well, the federal government, the government dismissed all of those appeals. And so the only decision that's final is that Northern District of Illinois decision. No, no, no, no. But you can intervene in the Seventh Circuit, you see. And you have a much better argument because you get rid of that point that it doesn't apply to you. Because that one does apply to you. We did. Yeah, so what happened? The government objected to that. I mean, part of the whole theory of this case is fundamentally is that do the states have the ability to intervene in a case when the federal government won't defend the law? I understand that. But, I mean, I just, what's happening in the Seventh Circuit? Because it certainly would be a simpler case if we just had that Seventh Circuit case. What's happening? Well, we have tried to intervene in that case, Justice Breyer. And the case that this court accepted was the case out of the Ninth Circuit. I know that. But I'm asking you what's happening in the Seventh Circuit. The theory still applies. Please. Do you know what's going on in the Seventh Circuit? I would just like to know. You may not know that. I do. There is briefing underway, and those issues are on appeal. But the question, once again, is do the states have allowed to? Sorry, those issues on appeal are which issues in the Seventh Circuit now? This exact issue. Yes. And you moved to intervene in that case? Yes, Chief Justice. And what happened with that motion? Those motions, they're still pending. This court just made it to the court first. I thought the district court denied your motion to intervene in the Northern District of Illinois, and it's on appeal in the Seventh Circuit. Justice Breyer, yes, that is correct. How important is the APA to your argument? What if this were a statute? Justice, I think that it's important because there's not only the financial interest the states have at stake, but rule and notice commenting rulemaking is something that's very important. It allows the states to express their interest, and, you know, it's a complicated sometimes. But let's imagine the public charge rule were a statute and not an APA rule. So you're not losing the ability to participate in notice and comment, but you would presumably be suffering the same downstream economic effects that you say that you're suffering here. So would you be here making the same arguments? We would in relationship to Rule 24 and whether the states have a right to intervene. That's just part of the interest the states have in that interest being impaired. So this isn't driven entirely by your inability to participate in notice and comment and the administration's circumvention of notice and comment in your view? Justice, not entirely, but that is part of the states' reasoning is that there's not only a financial impact, but that it's important that integrity of the process so in the future states have the ability to provide notice and comment on rulemaking so their interests are considered. But when you say not entirely, just to follow up that question, do you mean that even if the APA weren't involved here that you're trying to vindicate the point that when the federal government decides to change course, the states have the ability to come in pretty much anywhere they want and step into the federal government's shoes? Justice Kagan, I think the analysis is really that Rule 24 analysis. Was it timely filed? Is that interest being impaired? And maybe most importantly, that fourth prong, is there adequate representation in protecting those interests? Yes, so I'm hypothesizing a world in which the federal government has dropped out and so the states can say, you know, if not for us, there'll be nobody to defend the law. You're saying even put aside any APA issues that there might be, whether it's a statute or what have you, that courts should understand the intervention mechanism as a way for states to take the place of a departing federal government. Yes, Justice Kagan, this very court recognized in Massachusetts v. EPA that states have a special solicitude. We do have special interest, or there's interest, even going back to the Cascade v. El Pacho natural gas case, that economic interest within a state is something that, you know, this court can consider when it looks at intervention as a matter of right. And I think even the respondent states agree that, you know, there's interest here that we have and that states should be allowed to intervene when the federal government won't do its job. Thank you, counsel. Justice Thomas, Justice Breyer, Justice Alito, Justice Sotomayor. When a court says that a rule is unlawful and the government then acquiesces in that court decision, is it the usual practice that the government then has to go through notice and comment to repeal what they've just accomplished through acquiescence, or is that the issue that you're raising here implicitly in this case? Because I'm not aware of a practice of doing that. I'm not aware of a practice of not doing that either. Justice Kavanaugh, this is unprecedented, so in many ways... Well, it's not. Let me just interrupt. You've used that word a lot. It's very much not unprecedented, as Justice Thomas says, for the government to acquiesce in an adverse judgment in validating a rule. That is not unprecedented at all. So what is unprecedented here? Justice Kavanaugh, what is unprecedented is that the federal government didn't let the states come in. They opposed our intervention, and they wouldn't let us defend a rule that they no longer wanted to defend. So we're not... Our position as a state is not that the administration has to defend a rule that it doesn't like. We believe that if they're not going to defend the rule, then the states have an interest in defending the rule. And if there's a future administration, it's important because, you know, California and Arizona could be on opposite sides in the future on this issue. But as a matter of right, we do believe the states have a right to intervene, and we do think that using a district court decision to essentially then create a baseline for what a future rule would be, I think it makes it more difficult in the future to promulgate or... Justice, under that theory, General, there would never be an effective acquiescence by the federal government. I mean, there's always some state out there that has a different position from the federal government's when the federal government acquiesces. Whoever the federal government is, there's always going to be a state that thinks it's done the wrong thing. You're essentially saying there shall be no further federal government acquiescence in court decisions. Justice, that's not what the state is saying. What the state is saying is that when the federal government refuses to defend a law or tries to undermine a rule, the states have special servitude. And especially when you go through that Rule 24 analysis, you know, is there an interest? Is that interest being impaired? And is it adequately being protected by the representation? So the courts would have to do that analysis. But I do think it would allow the states more opportunities to defend rules when the federal government won't. Justice Kavanaugh, anything further? No. Justice Barrett? One question. I'm trying to isolate the scope of your argument, and I asked you before how important the APA was to it. How important to your argument is it that we already had granted cert on this issue? Does that matter? Justice Barrett, I think it matters in the context of the unprecedented nature of what the federal government did in this case. But it wouldn't change your argument if this had happened and you had moved for intervention before we had acted to grant cert. You would still be making the same argument. I believe so, Justice. Thank you, counsel. Mr. Fletcher? Thank you, Mr. Chief Justice, and may it please the Court. The 2019 public charge rule did not regulate or confer any rights on the petitioner states. Instead, petitioners assert an indirect economic interest in the rule's downstream consequences. Relying on predictions that were made when the rule was drafted, they say that it would cause DHS to deny adjustment of status to people who would be more likely to use state-funded public benefits at some point in the future. But we now know that those predictions were wrong. During the year that the 2019 rule was in effect, we know that it affected only about five of the approximately 50,000 adjustment of status applications to which it was applied, or about one one-hundredth of one percent. The states do not have a legally protectable interest in preserving that negligible indirect effect, and even if it did, they could not justify intervention and appeals from preliminary injunctions that do not apply in petitioners' jurisdictions and that now have no effect anywhere because the 2019 rule has been vacated in a separate final judgment. The Court of Appeals did not abuse its discretion in declining to allow petitioners to prolong appeals that no longer have any practical consequence. A petitioner's criticisms of the government's litigation conduct do not call for a different result. Congress made a policy choice to vest in the Department of Justice the decision whether to seek further review of decisions against the United States. This Court has emphasized that both the government and the courts benefit from that policy precisely because the Solicitor General takes a selective approach and often decides against seeking further review, and as some of the questions this morning have suggested, it's not at all uncommon for the Solicitor General to make that decision when the decision in question invalidated a regulation. Here, DHS had decided to issue a new public charge rule. The ongoing litigation would have complicated that rulemaking and required intrusive discovery. The 2019 rule was not producing its intended effects, and the rule's unintended and unwanted effects were aggravating a public health crisis. Petitioners disagree with the government's decision to dismiss its appeals when faced with those circumstances, but that disagreement does not allow them to revive this litigation that the government had decided was not in the best interest of the United States. I welcome the Court's questions. Mr. Fletcher, I think Petitioner was doing a little bit more than simply disagreeing with the acquiescence. From my understanding, they were disagreeing with the government's refusal to allow them to participate or to intervene at the appellate level in litigation that they thought would affect them significantly. So how do you, rather than simply focusing on the underlying issue, would you also respond to the fact that they think that intervention is a normal practice in some of these cases at the end of administrations? I don't recall the government opposing such interventions. So would you simply address that a little bit? Of course, Justice Thomas. So this is a point that they made in the reply brief, and they pointed to two examples where they say the government did not oppose intervention in analogous circumstances. Actually, in both of those cases, the request for intervention came long before the government had decided against seeking further review. So those aren't analogous examples. Candidly, Justice Thomas, I'm not aware of a lot of cases where this has come up, where parties have sought to come in after the government decided to dismiss appeals. Here, the government made its decision to oppose that intervention because we don't think the petitioners satisfy the requirements for intervention as of right, and we don't think permissive intervention is appropriate either. And that's really part and parcel with the judgment that we don't think continued litigation of these cases in the face of ongoing notice and comment rulemaking is in the government's interest or the public interest. Mr. Fletcher, the way you have briefed this case is rather strange because you focus entirely on Federal Rule of Civil Procedure 24, which has no application to the courts of appeals, nor does it have any application to us. The rules for appellate intervention and intervention before this court have to be judge-made rules if intervention is going to be allowed at all. So there's no reason why the courts of appeals or this court should be tied to the strict letter of Rule 24. And in fact, some of what Rule 24 says is very difficult to fit with considerations for appellate litigation. So why have you briefed the case this way? Well, Justice Alito, this court said in Schofield that although Rule 24 doesn't strictly apply in the courts of appeals, it's a distillation of traditional principles of intervention, so it's a helpful guide. That's the way the parties brief things in the Ninth Circuit, and that's principally the way that the states have tried to justify their intervention is that they meet the standards of Rule 24. We don't think that they do, and so we've met their arguments on those terms. I completely take the point that Rule 24 doesn't apply by its terms, that intervention in the courts of appeals, which is what this is about, is about sort of judge-made rules about courts controlling their own docket. I think if that cuts in any direction in this case, though, it sort of cuts further against the petitioner states because it suggests that the court is reviewing the Ninth Circuit's exercise of its own judge-made authority to decide whether or not to allow intervention. Well, why is that so? If we step back and refuse to let the trees obscure our view of the forest, we can take into account everything that happened in this situation, which seems to be quite unique. I congratulate whoever it is in the Justice Department or the executive branch who devised this strategy and was able to implement it with military precision to effect the removal of the issue from our docket and to sidestep notice-and-comment rulemaking. But all of that took place. I'm not aware of a precedent where an incoming administration has done anything quite like this. And this was an issue that we had agreed to hear before. So if we step back and recognize that we're not tied to the minutia of Rule 24, why shouldn't intervention be allowed? That doesn't mean you're going to lose. It doesn't mean that the old rule is sound or that it's going to be resuscitated. Why shouldn't intervention be allowed? Why would it be inequitable to allow intervention? Or to put it the other way, why doesn't equity argue in favor of allowing intervention? So, Justice Scalia, there's a lot packed into the question that I hope we get to come back to, but I want to sort of get right to the point. I think the first thing to think about when stepping back and looking at the entirety of the situation is that this is not a circumvention of notice-and-comment regulation. DHS is engaged in notice-and-comment rulemaking that the states will be free to participate in to make a new public charge rule. Now, I take the point that petitioners have said this is unprecedented, and they've been pressed on what is unprecedented, because not seeking further review of a decision against the government is not, even when it involves a regulation. I think we all now agree with that. And they focused on the fact that the case was in this court. And I do take the point. I'm not aware of another case that transpired like that. But that's because anything that the government did in that situation would have been unprecedented. Well, to me, Mr. Fletcher, the issue about the government's behavior here is not that the case was in the court. I mean, the case could have been in the court, and if the administration had come in and said, we don't want to defend anymore, I mean, the government doesn't have to come up here and defend something that it no longer believes in. The real issue to me is the evasion of notice-and-comment. And, I mean, basically, the government bought itself a bunch of time where the rule was not in effect. If the administration had come in and said, oh, my gosh, we have a notice-and-comment rule, we really hate it, we have to change it, I mean, it would have taken months to change it. And the administration didn't have to do that. Now, I'm sure you'll tell me why that way of looking at the essential problem here is wrong. But I also want you to assume that that is a problem and that we shouldn't be green-lighting that behavior for your administration or any other administration, all right? And on that assumption, what should be the remedy? Because it just seems as though you're here and saying, you know, you can just tell us to go home and nothing's going to happen to us and everybody will just do it the next time. What's the remedy for something like this if I think that this does present at least a significant APA question? So let me take that question on its terms and then hopefully come back to some of the premises later. I think if you have that concern, the solution is not changing the rules of intervention, it's not letting the states come in and make it impossible for the government to acquiesce in adverse decisions, as you suggested the other side's approach would. The solution, I think, is the one that Justice Gorsuch highlighted in his opinion when this case, this rule, was before the court on a stay from the Second Circuit, and it is the nationwide relief that the district court entered here. We don't think that the APA authorizes district courts to enter that relief. We don't think it's consistent with principles of equity or with Article 3. And if this court makes clear in an appropriate case that that's not within the authority of district courts to enter, then you don't have this problem because what I take to be everyone agrees that the government has the ability to decide not to seek further review of district court decisions. And if you make clear that district courts do not have the authority to issue this sort of relief, then the problem goes away. Mr. Fletcher, I think you put your finger right where my concern has been. I'm not familiar with the APA's set-aside language, which was supposed to adopt prior practice at the time, any prior practice in which a district court purported to be able to do more than set aside the rule with respect to litigants in the case or controversy before it. Are you? I'm not, Your Honor. And, in fact, for most of our history, even after the APA's adoption, I'm not aware of district courts doing that until relatively recent times. I think there's some scholarly debate about exactly when, but yes, in general, correct. And so you agree that, therefore, the Northern District of Illinois erred when it issued a nationwide injunction? We do. Just a little thing. I don't think anything turns on this. Technically, it wasn't an injunction. It was a vacatur of the rule, but we'd say exactly the same thing. Okay, but now you present me with another issue, because that has not been the question in this case. And so, hmm. What do I do with that? So I take the point. I think one thing it can do is give you some comfort that there is a solution to these problems to the extent that you think they are a problem. And I think what some of the questioning so far this morning has highlighted is that the solutions that are being offered up by the parties in this case, where they are trying to get at that concern, are really overbroad. Is that an issue that, for example, your friend on the other side could raise if he's successful in intervening in the cases? If he's successful in intervening in... Yeah, that's an argument. What are you intervening for? Well, one thing is that there shouldn't be a nationwide injunction issued in Illinois or one beyond the parties in the Ninth Circuit, and, therefore, you should vacate the injunctions. That would be one of many arguments that he could raise, yes. Well, but I thought part of your briefing was that, you know, this is a useless exercise. Why are we here? You know, everything's done. Well, apparently not everything is done. Well, everything is done was focused on the specific circumstances of this case where it's about a preliminary injunction that don't apply in the petitioner state's jurisdictions and that don't have any practical consequences as long as that... The Illinois one's nationwide, right? The Illinois one is nationwide. But the question before this course is whether they're entitled to get into... Well, they have to get rid of this one if they want to proceed against the one in Illinois. Otherwise, it does them no good. Well, I don't know that that's true. These are two preliminary injunctions that don't apply in their jurisdictions at all. Well, you agree, don't you, that they have standing because people who are illegally or... Illegally, they don't meet the public charge rule in the United States, they're going to go throughout the United States, as people do. Chief Justice Roberts, I think it's very, very hard to make that case given the record that we have about the low number of adjustment of status decisions that were actually affected by this rule while it was in place. And the rule... The injunctions don't apply to applications by residents of the petitioner states. I think in those circumstances, it's getting very, very attenuated to say that maybe the rule will result in someone being granted adjustment of status. Maybe sometime down the road, they will apply for and receive benefits, and maybe they will have, in the interim, moved into one of the petitioner states. But, Mr. Fletcher, can I follow up on what the chief just asked you? You opposed intervention in the Northern District of Illinois, right? So, the principle that you're arguing for really doesn't turn on the fact that the Ninth Circuit's preliminary injunction was not nationwide. I mean, you opposed their ability to enter in the Seventh Circuit and challenge the scope of the injunction. That's correct, Justice Barrett. We have... I'm just highlighting that we have arguments here that don't apply in the Seventh Circuit case. We also have arguments that apply in both cases, and there are some arguments that apply in the Seventh Circuit case that aren't at issue. Because you just flatly think that the state shouldn't be able to intervene, period. That's correct, yes. Can I also say, what about their argument? Let me just look. One, you say only five people were affected, but you added change of status applicants. So, what they think is there may be millions of people just across different borders. Who will be here? You say, if a question of food stamps. And so, all those people, we don't know. The record doesn't tell us whether they're in Arizona or not. And they say, it's a billion dollars, and you say it's five people, and so forth. Okay, that's one thing. But then they say, we have a totally different ground. Our ground for intervening is simply this. The decision of the courts about the merits of the old rule is completely wrong. And if you allow this to stand, this totally wrong decision, courts of the United States, what the government will do is just acquiesce. And that way they avoid notice and comment rulemaking. And that should be a ground for our being able to intervene, to ask for rehearing on bank, or maybe ask the Supreme Court. Pretty similar to what we just allowed in that case of the Attorney General. You know, it was a different party. What was it, Kentucky? And pretty similar. They won't defend it, but we'll defend it, because it's totally wrong. And you see what we gain? Now, to me, that is a law professor's issue. My God, I don't know what the answer is. And we don't have to get into any of this mess if we can only get the Illinois case here in front of us. That's why I keep asking, what should we do? Justice Breyer, let me start with the effect of the rule, because I think it's important to disaggregate a couple of things. The rule does apply to people seeking to come into the United States to be admitted at the border, but it very, very seldom actually has application there, because the State Department has vetted those people before they come if they are coming on a visa. If they're not coming on a visa, if they're coming illegally, there are other grounds to deny them admission. So the rule has very, very little practical effect at the border. Where it has effect, and this has been common ground across all of the rulemakings and between the parties, is in those adjustment of status decisions, whereas I explained it has turned out to have very little effect at all. So that's the practical stakes. The billions of dollars, I think it's important to understand, are not about the intended effects of the rule. Justice Barrett laid out in her dissent in the Cook County case on this issue that actually the rule does not apply to very many people at all who are actually entitled to receive public benefits, because generally you're not entitled to receive them until after you adjust status, or if you're in a vulnerable category like an asylee or a refugee that's not subject to the public charge bar at all. The billions of dollars are about people who are confused about the rule, or mistaken about its effects, and who are dropping benefits, even though those benefits would not affect their entitlements to come into the case. Keep going. I was just going to say, and I think that highlights that it's hard for the petitioner states to say that they have a legally protectable... Yeah, but the second point is my real point. So the second point is about, what about the Seventh Circuit case? They have another ground, but then what about the Seventh? So, right. If you're interested in the Seventh Circuit case, I guess what I would say is the Seventh Circuit case is not the one that's before you now, and the one that's before you now has not only the reasons why we think they shouldn't come into the Seventh Circuit case, but other problems as well. And what you shouldn't do is do what they're asking you to do, which is sort of decide this case as a way of telling what the Seventh Circuit, what to do in that case, which presents different issues and additional arguments. So we would urge you not to sort of decide this case with a view towards what the right answer in the Seventh Circuit case is. I have a question about historical practice, to the extent you're aware. When a notice and comment rule is issued, and then a court finds that that rule is unlawful, and then the government chooses to acquiesce in that judgment, what then usually happens? I suppose one thing is notice and comment about a new rule. That would be about the new rule. Another option is notice and comment about the repeal of the rule, even though it's an acquiescence in the judgment. A third option is just nothing happens. The old rule is just gone. The government keeps going without any replacement rule. Do you know what that second thing, notice and comment about the repeal after an acquiescence, I'm not sure I've seen that, but I want to get your understanding of historical practice. So I can't pretend to have an exhaustive understanding of this. We have looked into it. I'm aware of cases in the first category and the third category. We have not found cases in that second category, at least where what you're talking about is a decision that sets aside the rule or vacates the rule on a nationwide basis. That's my understanding, too. I think it's odd to think about notice and comment for repeal after an acquiescence. I think there would usually be notice and comment for the new rule, and that's now started up here. And I guess you've looked into it and haven't found anything either way, I guess. I haven't found any examples of it happening, and there are court decisions from the D.C. Circuit, including, I think, your opinion in the EME Homer City case, that say, recognize, sometimes this is a thing that the government does and that it is good cause to forego notice and comment when what it's doing is effectively compelled by a court decision. And then the second question, which is kind of on a different tack, I think what they're trying to do here, if I'm piecing it together, and this picks up on Justice Sotomayor's questions a bit, is to intervene here to munsingware these decisions. And then to bring an APA challenge to the repeal, I think, would be the next part of the strategy, if I'm understanding it. And then to win or to do better in that APA challenge because the government wouldn't be able to rely on the adverse decisions because they've been munsingwared. So that's about my understanding of what they're trying to do as well. Okay, so why is it wrong for them to intervene to try to munsingware the adverse decisions? So for a couple of reasons. I think, first of all, even on that account of their strategy and assuming that the strategy otherwise works, that doesn't justify them getting into this case because this case doesn't include the judgment that was the basis. Would it justify them getting into the other case? So I think not. We wouldn't have that argument about the limited scope of this APA. Intervention for the purpose of seeking to munsingware a case is not good enough? I don't think so. I don't think, you know, normally munsingware is about relieving the parties to the case of the effects of the judgment. I'm not aware of any precedent for allowing new parties to come into the case to seek munsingware vacature. There's no precedent either way on that question, right? That's fair enough, but also munsingware is also about relieving the parties of the effects of a judgment after a case has become moot. You know, here the mooting event was the government's decision not to seek further review of that Northern District of Illinois decision, and so it's a little hard to see how you munsingware the decision that actually produces the mootness in the other cases. So I think that's an additional obstacle for them. And then the other thing I just say sort of stepping back a little bit more broadly is, you know, this is a case about intervention and when they have a right to intervene or when the Ninth Circuit would have abused its discretion in keeping them out, and there are a lot of parties that might have interest in judicial precedent or in the development of the law more generally. That's the sort of interest that I take them to be trying to vindicate with this munsingware argument, and that's just never been recognized as the sort of thing that justifies intervention as a right. Can we talk about the munsingware here? It's munsingware of what? Assuming that they, that equity, and I, you know, putting that on hold, what would they munsingware? I thought the preliminary injunction had dissolved once the case was dismissed. Justice O'Mara, I don't think that's right. We dismissed our appeals in the Ninth Circuit. The litigation in these cases     The preliminary injunction is still in force. It just doesn't have any practical effect. And I think that's the sort of thing that I take them to be trying to vindicate because of the Seventh Circuit's decision, or I'm sorry, the Northern District of Illinois. So it would still have to be, it would still have to be, you still have to get the Seventh Circuit injunction lifted before anything happens in the Ninth Circuit. Before the Ninth Circuit decision has any practical consequence, yes. Thank you, Counselor.      You think it was wrong for the Ninth Circuit to have the injunction lifted before anything happens in the Ninth Circuit. Yes. I think that's the sort of thing that I take them to be  I think it was wrong for the new administration not to go through notice and comment rulemaking before repealing the order. What would you do? Well, I suppose if I was in his shoes, you know, I might try to intervene. But, again, there are rules about who has an entitlement to intervene, and we don't think the states satisfy them because there's disagreement. So there's nothing that an affected state could do, in your view? You would give up if you were General Branovich's shoes. Because you say, well, you know, I can't intervene, I can't go and complain about the fact that there wasn't notice and comment because it's a judicial decision that allowed them to dispense with notice and comment. So you think that in this situation there's nothing that can be done? I don't think so, but, again, that's tied to the fact that this is not a rule that gives them any rights, that regulates them, that really has any effect on them. So then it's really quite a license for collusive action for any incoming administration to change rules that were enacted pursuant to the APA and, therefore, can only be repealed under the APA. It's a way to avoid that burden across the board. So I guess I just disagree with that characterization, Mr. Chief Justice. I mean, this is a case where when the administration changed, the president ordered a review of the rule, DHS decided it and it had sought this court's review but had done so on the premise that this was a rule that was important to DHS that DHS wanted to preserve. Right, right. I'm not questioning anybody's motives. I'm questioning the ease with which a decision in your favor will make it for an incoming administration to avoid notice and comment review because, and you'd say, well, if you were in Mr. Ronovich's shoes, you would sort of take your briefcase and go home. It's nothing to do. And yet circumventing the APA is a pretty big deal. Well, Mr. Chief Justice, we may have a disagreement about whether this is correctly characterized as circumventing the APA. Well, it does avoid notice and comment rule making on the repeal of the rule. So that's correct. In this case, of course, DHS is going through notice and comment rule making. That's the new one. That's a different thing. That's correct, but it does put all the same issues before them. I don't think we can give them the opportunity to comment. Beyond that, we cite a bunch of decisions of DOJ deciding not to seek further review of decisions vacating the rule. You could call each of those circumventing the APA if you wanted to because they have the same rules. I'm suggesting that we have to think long and hard before adopting a rule that allows anybody, any administration to circumvent notice and comment rule making before the repeal of a rule. As far as I can hear from you, in Mr. Bronovich's shoes, you're saying there's nothing to be done. What are you suggesting? I would say a couple of things about the consequences of a decision agreeing with us in this case. It wouldn't apply in cases where someone could satisfy the requirements of rule 24A where their legal rights were directly affected. The part of our argument here is that Arizona and the other states do not have a legally protected stake in the rule. The answer might be different if you had parties before you who did have such a stake. I take it everyone agrees that the government has the prerogative to decline to seek further review. The effect of taking the rule off the books without notice and then countermanding Congress' choice to put decisions in the hands of the department. Justice Alito? Has the government previously argued that district courts lack the power to issue nation writing injunctions in situations like this? We have pretty consistently in this court. I believe we made that a feature of our stay application in the DHS versus New York case. Also, I believe in the contraceptive coverage case that was argued in the last administration. Counsel, this is a very complex issue. But I understood that the prior administration had in two cases been before district courts that issued injunctions of rules. I think in Nevada versus U.S. Department of Labor, the prior administration filed an appeal but then decided to put it in abeyance and decided to put it in abeyance. This was invalidation, correct? So this has happened across generations, correct? That's right. Each case differs in its particulars. One of the things that made this case different is that this was a case that the government brought into court and got granted before DHS decided to replace the rule. If it was clear that the rule wasn't having its intended effect, it would be unusual for the government to grant it. Here, those facts came to light after the petition had been filed. It's the same sort of decision not to ask this court to review. This has happened for generations. The situation was unprecedented, but the idea that the government can choose not to seek further review has happened across administrations in a lot of different circumstances. Mr. Fletcher, just going back to your colloquy with the Chief Justice, I guess I'm surprised you didn't say something else. Maybe the Solicitor General never says somebody can bring an APA action against us, but isn't that the answer? Somebody can bring an APA action. If there's been circumvention of the APA, rather than go through this quadruple bank shot, why don't we just say you have a good point about circumvention of the APA. Go bring an APA action. So they could bring an APA action. That's right. Candidly, we would argue in that APA action. You would take the other side. You would say they don't have an APA action either. I understand that. I think what you did was not circumvention. I understand that the government is here to defend what it did and that's perfectly appropriate. But on the assumption that the government circumvented the APA, isn't the right remedy an APA action? They can absolutely do that. Just to follow up on Justice Kagan, I just want to make sure I understand. If a state were to bring an APA action, the government's position would be what? I think we're talking about an APA action that's challenging the rescission in March of 2021. And we would say that that was valid without notice and comment. And the fact that that judgment had been entered, finally vacated the rule and was no longer being appealed justified the rescission of the rule. Even though on the government's side the scope of the vacature was unlawful. That's correct, yes. I guess that leads me to where I'm stuck in this case. It's sort of where the Chief Justice is. Any administration coming in of course can agree not to contest a judicial opinion. It's not   that the government has a nationwide scope that it believes to be unlawful as the basis for the rescission. How do I think about that when we come to the equitable considerations associated with intervention? That the government's rescission here is premised on what it admits to be an unlawful order. So Justice Gorsuch, I think often when the government decides not to seek further review of a decision including a decision setting aside a regulation, it may disagree very strongly with the legal grounds for that decision and think that the order was unlawful. Of course the government often disagrees with the judges. That's the independence of the judiciary and we're all stuck with that. But what is kind of a little different in this case is to tell a state that it has no recourse to the APA, to litigation, all because the government's acquiescence in a judicial order that agrees is wrong. And is that an equitable consideration that we should as judges take into account when we're deciding a question of intervention? Noting that intervention is ultimately an equitable sort of question. So it is an equitable question. I would hesitate to encourage courts to rely on those sorts of judgments because one of the themes that I've been trying to convey this morning is that Congress has decided that these are decisions for the government to make about whether or not to seek further review. Different story if you have a party that actually has a stake that justifies intervention as a right. But if you're not in that position, I guess I'm just wondering would that be the narrowest basis of decision if the court were to rule against you that those are unique circumstances that might justify permissive intervention at least here? Those are narrow circumstances. I'm not sure they're the basis for an administrable rule because of course I've just told you that we disagree. I know you disagree. But if we were to rule against you would that be the narrowest basis? Another narrow way to lose? Top question. I've had it presented to me. Nobody likes it. I'm sorry to ask it. I take that. I think if we of course don't think we should lose at all. We think a lot of the concerns would be addressed by adopting your view. If you're not willing to go down that road and you think the states ought to be permitted to intervene. The narrowest basis in this case would be to seek Monsing Ware. They can come in and seek Monsing Ware and that's all. That relieves them of their concerns and doesn't create the problems we have about forcing the government to continue litigating about this rule. Which was a big part of the concern we had when we were approaching Monsing Ware. So intervening for the purpose of seeking Monsing Ware is the narrowest ground you suggest. I'm open to other even narrower grounds but that's the narrowest one I can come up with. And then going back to the APA suit challenging the rescission of the rule. I think that raises a big question. The chief justice raises important concerns but I think they're important concerns going both ways there because it's never been the case as I understand it that acquiescence and adverse judgment triggers notice and comment responsibilities for the repeal of that rule. At least you haven't found anything. Correct. I don't want to represent that there's nothing out there. So it would be a big deal I think to hold that all of a sudden the government when it acquiesces in a judgment also has to go through notice and comment for the repeal different from the new rule for the repeal. That would be a big deal. Correct. I agree. And now we're going hamstring new administrations. The flip side is of course not allowing new administration to get out of the starting blocks because they're stuck. I agree with that. I just add it's not just the transition administration. This happens even within an administration. There's a new secretary that comes in. Or the government decides there's too much litigation risk. We might make bad law. We don't think it's such a good idea. There are all sorts of reasons why the government might acquiesce and a judgment saying anyone can intervene and force litigation or there has to be notice and comment rulemaking would be quite disruptive. Thank you. Mr. Spirit. I have a question about historical practice. As footnote 11 in your brief makes clear, lots of historical practice for the government acquiescing and not appealing. What about the government opposing intervention in this circumstance? I think these are two separate threads. We can all agree that the government has the right to make a judgment in its favor. That's a distinct question from whether the government should oppose or a court should deny permission to a state who wants  at that point. I don't have a lot of examples of that. I think in part because it hasn't come up. The two examples are that the government has made a decision that further review isn't in the government's interest. It might make bad law. When that happens, part and parcel of that decision is a judgment also that we don't want other parties to step in and continue the litigation which forces us to continue the litigation  are doing. The examples they come up with, nobody is able to come up with more. When they say this is unprecedented on the government's part, it's unprecedented on the state's part. I haven't done an exhaustive survey. It hasn't happened a lot. If they met the standards, we would take a different position. When we think they don't meet the standards, should a court allow them in to a case the government has decided continued litigation is not in the interest of the United States,  in the interest of the United States. I don't think it's surprising we oppose that because we want to avoid continued litigation. Thank you, counsel. Ms. Hahn. Mr. Chief justice and may it please the court. There are many ways we agree with petitioners about the legal standards governing intervention. Those standards are broad and we've relied on them ourselves. Those standards do impose limits and under the particular circumstances of this case, petitioner's motion to intervene in the 9th circuit exceeded those limits. The central problem with that motion is that there's no practical sense in which the 9th circuit proceedings threaten to impair the petitioner's asserted interest. There is no rule left for petitioners to defend in the courts below. This case can be resolved on that straightforward basis alone. I want to give us a bit more detail about why you oppose intervention. You said you generally agree with petitioner that there should be intervention available. I think, of course, California may have intervened in cases like Affordable Care Act. How is this different? I think some of those have involved matters perhaps not exclusively but matters that were nationwide or other states, involved other states. Would you just give us a little more detail? Yes, Your Honor. I think it goes to rule 24 standards that requires impairment of the petitioner's interest. As a more practical matter, what would the courts do below if petitioners were authorized to intervene? There is no rule to litigate. There is nothing that the Ninth Circuit can do to restore the rule. So the petitioner's motion really achieves nothing of significance. That's why we think that petitioner's motion was properly denied in the Court of Appeals here in the Ninth Circuit. What about Munsingware? Munsingware raises two separate issues, one that goes to the scope of the Munsingware doctrine, and the second is a separate case-specific question about rule 24's requirements. Munsingware itself, I think, as my friend from the federal government has explained, is a doctrine designed to relieve existing parties of the consequences of a judgment. I'm not aware of an extension of Munsingware that has been applied in this circumstance for non-parties to intervene in a moot case. But even if it was theoretically possible, that still would not be the case.      that  is a  case. I don't think that Munsingware is a good case. I don't think that Munsingware is a good case. There is no concern here. The concern is the ninth circuit decision on  preliminary injunction appeal. The decision does not require the state to do anything or refrain from doing anything.  does not require the state to intervene under the standards of rule 24. You have a different view if this were the case from the seventh circuit? It is a different question. The rule 24 analysis is different. The     until two years later. The court ruled on timeliness grounds and denied the motion concluding the petitioners had intervened too late. The court     and denied the motion   petitioners had intervened too late. The court ruled on the petitioners had intervened  late. The court ruled